JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Troy Chiddick

## DEFENDANTS

Rosemont College
Rosemont College of the Holy Child Jesus

**(b)** County of Residence of First Listed Plaintiff   Montgomery County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** ~~At~~torneys *(Firm Name, Address, and Telephone Number)*
Caren N. Gurmankin, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq.; 42 U.S.C. §1981; 42 U.S.C. § 12101, et seq.

Brief description of cause:
Plaintiff was discriminated against based on his race.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
8/8/2022

SIGNATURE OF ATTORNEY OF RECORD
*Caren Gurmankin*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ King of Prussia, PA 19406 _____

Address of Defendant: _____ 1400 Montgomery Avenue; Rosemont, PA 19010 _____

Place of Accident, Incident or Transaction: _____ 1400 Montgomery Avenue; Rosemont, PA 19010 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 08/08/2022 _____   _____   205900

_Attorney-at-Law / Pro Se Plaintiff_      _Attorney I.D. # (if applicable)_

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Caren N. Gurmankin _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 08/08/2022 _____   _____   205900

_Attorney-at-Law / Pro Se Plaintiff_      _Attorney I.D. # (if applicable)_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Troy Chiddick | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Rosemont College, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court. (See reverse side of this form for a detailed explanation of special
   management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   ( X )

| | | |
|---|---|---|
| 8/8/2022 | *[signature]* | Plaintiff, Troy Chiddick |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-405-2900 | gurmankin@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

_____ :
                                  :
**TROY CHIDDICK**                 :
**King of Prussia, PA 19406**     :
                                  :          **CIVIL ACTION NO.**
                    **Plaintiff,** :
                                  :
         **v.**                   :
                                  :
**ROSEMONT COLLEGE**              :
**1400 Montgomery Avenue**        :
**Rosemont, PA 19010**            :
                                  :
**and**                           :
                                  :
**ROSEMONT COLLEGE OF THE**       :
**HOLY CHILD JESUS**              :
                                  :          **JURY TRIAL DEMANDED**
                                  :
                    **Defendants.** :
_____ :

## COMPLAINT

**I.      INTRODUCTION**

Plaintiff, Troy Chiddick, brings this action against his former employers,

Rosemont College and Rosemont College of the Holy Child Jesus ("Defendants").

Defendants terminated Plaintiff, one of the very few Black employees at the management

level, after he complained about the race discriminatory conduct to which it was

subjecting him and other Black employees, and after Plaintiff advised Defendant of his

medical conditions (resulting from Defendant's discriminatory and retaliatory treatment)

and took medical leave in connection with the same.

Defendants' discriminatory and retaliatory conduct towards Plaintiff violated Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII");

42 U.S.C. §1981 ("Section 1981"); the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

II.   **PARTIES**

1.      Plaintiff, Troy Chiddick, is an individual and a citizen of the Commonwealth of Pennsylvania.

2.      Plaintiff is Black.

3.      Defendant, Rosemont College, is incorporated in Pennsylvania with a principal place of business at 1400 Montgomery Avenue, Rosemont, PA 19010.

4.      Defendant, Rosemont College of the Holy Child Jesus, is incorporated in Pennsylvania with a principal place of business at 1400 Montgomery Avenue, Rosemont, PA 19010.

5.      Defendants are engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

6.      At all times material hereto, Defendants employed more than fifteen (15) employees.

7.      At all times material hereto, Defendants acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

8.      At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

9.      At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes which form the basis of this matter.

2

### III.    JURISDICTION AND VENUE

10.    The causes of action which form the basis of this matter arise under Title VII, Section 1981, the ADA, the PHRA, and the PFPO.

11.    The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. § 1331.

12.    The District Court has jurisdiction over Count II (Section 1981) pursuant to 28 U.S.C. §1331.

13.    The District Court has jurisdiction over Count III (ADA) pursuant to pursuant to 42 U.S.C. §12117(a) and 28 U.S.C. §1331.

14.    The District Court has supplemental jurisdiction over Count IV (PHRA) and Count V (PFPO) pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000(e)-5(f).

16.    On or about September 30, 2020, Plaintiff filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), complaining of acts of discrimination and retaliation alleged herein.  This Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").  Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PHRC Complaint of Discrimination (with personal identifying information redacted).

17.    On or about April 15, 2021, Plaintiff filed a Second Complaint of Discrimination with the PHRC.  This Complaint with cross-filed with the EEOC. Attached hereto, incorporated herein, and marked as Exhibit "2" is a true and correct copy of the PHRC Second Complaint of Discrimination (with personal identifying

information redacted).

18.     On or about May 16, 2022, the EEOC issued to Plaintiff a Notice of Right

to Sue for his Complaints of Discrimination.  Attached hereto, incorporated herein, and

marked as Exhibit "3" is a true and correct copy of the Notice of Right to Sue (with

personal identifying information redacted).

19.     Plaintiff has fully complied with all administrative prerequisites for the

commencement of this action.

**IV.     FACTUAL ALLEGATIONS**

20.     Plaintiff began working at Defendants in or about August 2008.

21.     At all times material hereto, Plaintiff consistently demonstrated excellent

performance throughout his employment with Defendants.

22.     As of around Fall 2017, Plaintiff held the position of Dean of Students and

reported directly to Lisa Dolling (white), Provost and Senior Vice President for

Academic and Student Affairs.  Dolling reported to Jayson Boyers (white), President.

23.     Defendants' demographics evidenced a bias against Black employees.

Evidence of the same includes, but is not limited to, the fact that, to the best of Plaintiff's

knowledge, he was one of only two Black employees who indirectly reported to Boyers

and he was one of only two Black employees who reported directly to Dolling.

24.     Throughout Plaintiff's employment, Defendants treated Plaintiff less

favorably than white and other non-Black employees.  Evidence of Defendants' race

discriminatory treatment to which they subjected Plaintiff includes that which is set forth

herein.

25.     Dolling and Jane Federowicz, Assistant Vice President for Human

Resources, repeatedly criticized Plaintiff for the racial make-up of his direct reports, almost all of whom were Black.

26.     Dolling and Federowicz pressured Plaintiff to hire more white employees into his group.

27.     Dolling told Plaintiff that she was going to "fix" his speaking and writing.

28.     Dolling told Plaintiff that her goal was to "fix" the way that the students from the "inner city" spoke.

29.     Dolling repeatedly, and unjustly, criticized Plaintiff's Black direct reports.

30.     Dolling repeatedly asked Plaintiff how long his Black direct reports were planning to stay employed at Defendants.

31.     Dolling repeatedly pressured Plaintiff to ask his Black direct reports how long they planned to stay employed at Defendants and whether they were applying for jobs elsewhere.

32.     Dolling and Federowicz undermined Plaintiff's authority by bypassing him and communicating with his direct reports regarding issues for which he had responsibility.

33.     Dolling repeatedly and unjustly criticized Plaintiff for issues that were not his responsibility.

34.     Dolling repeatedly and unjustly criticized Plaintiff when he followed instructions that she had given him.

35.     To Plaintiff's information and belief, Dolling and Federowicz repeatedly interrogated his direct reports and pressured them to give negative feedback regarding his leadership.

36.     When Plaintiff placed two of his Black direct reports on a search committee for an open position in his department, Dolling told him to remove the two Black employees from the committee and to replace at least one of them with a white employee.

37.     Plaintiff understand that Dolling instructed him to remove the two Black employees from the search committee for the open position, and replace at least one of them with a white employee, because Defendants wanted a white employee in that open position.

38.     Dolling instructed Plaintiff to move a Black student out of her room so that white students could move into the space.

39.     When Plaintiff objected to relocating the Black student and asked why Dolling wanted to do so, Dolling yelled at him and told him to get the Black student out of the room immediately so that the white employees could move in.

40.     Dolling and Federowicz tried to portray Plaintiff, inaccurately, as someone who lost his temper and who acted in an intimidating manner towards Dolling.

41.     When Plaintiff refused to agree with Dolling on a particular issue in a meeting, despite her pressuring him to do so, Dolling stormed out of the room. Federowicz subsequently told Plaintiff that she and Dolling had never seen him so upset, to which Plaintiff told her that they were not going to make him out to be the "big Black guy" against the small white lady (Dolling), that they knew that he did not do anything wrong, and that Dolling was setting him up for failure.

42.     To Plaintiff's knowledge and belief, Defendants failed to take remedial and/or corrective action regarding his expressed concern that he was being treated

differently based on his race.

43.    On August 25, 2020, Plaintiff sent an email to Dolling in which he complained about Defendants' race discriminatory conduct.

44.    To Plaintiff's knowledge and belief, Defendants failed to take remedial and/or corrective action regarding his complaint about race discriminatory conduct.

45.    On or about September 14, 2020, Plaintiff complained about Defendants' race discriminatory conduct to Federowicz.

46.    To Plaintiff's knowledge and belief, no one at Defendants took action to remedy and/or correct the race discriminatory conduct about which he complained and to which he was being subjected.

47.    Rather than take remedial and/or corrective action regarding the race discriminatory conduct to which Plaintiff was being subjected, Defendants retaliated against Plaintiff, including that which is set forth herein.

48.    On or about September 17, 2020, Defendants put Plaintiff on a Performance Improvement Plan ("PIP").

49.    The September 2020 PIP was the first time in Plaintiff's tenure with Defendants that he had been subjected to any progressive discipline or any corrective action in connection with his performance.

50.    On September 21, 2020, Plaintiff went out on approved medical leave due to his dangerously elevated blood pressure.

51.    Plaintiff's medical condition resulted from the stress and anxiety that he suffered due to Defendants' discriminatory and retaliatory conduct.

52.    On or about September 30, 2020, Plaintiff filed a Complaint with the

PHRC setting forth allegations regarding the race discriminatory, and retaliatory, conduct to which he had been subjected.  He advised Defendants of the same on that day.

53.     To Plaintiff's knowledge and belief, no one at Defendants took action to remedy and/or correct the race discrimination and/or retaliation to which he had been subjected and about which he had complained.

54.     Plaintiff remained out of work on approved medical leave through on or about March 8, 2021.

55.     Plaintiff returned to work on March 9, 2021.

56.     Upon Plaintiff's return to work, he was told that he had been removed from his position of Dean of Students.

57.     Defendants informed Plaintiff that his only option to remain employed was to take the position of Program Director.

58.     The Program Director position was multiple organizational layers below that of Plaintiff's prior Dean of Students position.  As a result, Plaintiff asked if he could have the title of Assistant Dean, to which Defendants agreed.

59.     The position of Assistant Dean was a lower-level position, including with less responsibility.

60.     So that Plaintiff could remain employed at Defendants, he took the position of Assistant Dean.

61.     Plaintiff was told that the reason why Defendants removed him from his Dean of Students job and offering him one of two lower-level positions was "reorganization".

62.     To Plaintiff's knowledge and belief, they replaced him as Dean of

Students and put another individual into that position.

63.     Plaintiff was told that he had to vacate his office, and he was reassigned to a less desirable office in a les desirable building.

64.     Plaintiff was assigned tasks with deadlines that Defendants knew or should have known were not feasible to meet.

65.     On or about March 24, 2021, Plaintiff complained, again, about the discriminatory and retaliatory conduct to which he had been, and continued to be, subjected.

66.     To Plaintiff's knowledge and belief, no one at Defendants took action to remedy and/or correct the race discriminatory or retaliatory conduct to which he was being subjected.

67.     On or about March 24, 2021, Plaintiff again experienced dangerously elevated blood pressure as a result of Defendants' continued discriminatory and retaliatory treatment.

68.     Plaintiff submitted a doctor's note to Defendants in which he asked for a thirty (30) day medical leave as an accommodation to his medical condition, which resulted from Defendants' race discriminatory and retaliatory conduct.

69.     Defendants responded to Plaintiff's request for an accommodation by asking if he was able to work remotely rather than go out on medical leave.

70.     Plaintiff informed Plaintiff that, per his doctor's evaluation of his medical condition, he was unable to work for thirty (30) days but that, upon completion of a thirty (30) day leave, he would let Defendants know if he was able to work from home.

71.     On or about April 1, 2021, Defendants terminated Plaintiff's employment.

72.     Defendants informed Plaintiff that they were terminating his employment because he was unable to work from home and that they could not accommodate his request for thirty (30) days of leave.

73.     Defendants' asserted reason for terminating Plaintiff's employment was pretextual.

74.     Plaintiff's race was a motivating and/or determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including subjecting him to a hostile work environment, demoting him, and terminating his employment.

75.     Plaintiff's complaints about Defendants' discriminatory conduct were motivating and/or determinative factors in connection with Defendants' retaliatory conduct to which Plaintiff was subjected, including subjecting him to a hostile work environment, demoting him, and terminating his employment.

76.     Plaintiff was disabled, and/or had a record of a disability, and/or was regarded as being disabled.

77.     Plaintiff's disabilities, including his record of disability and Defendants' regarding him as having a disability, were motivating and determinative factor in connection with Defendants' discriminatory treatment of Plaintiff, including the demotion of Plaintiff and the termination of Plaintiff.

78.     Defendants failed to provide Plaintiff with reasonable accommodation for his known disabilities by granting his request for an accommodation.

79.     Defendants retaliated against Plaintiff for requesting a reasonable accommodation for his disability.

80.     Defendants failed to prevent or address the discriminatory and retaliatory

conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

81.     The retaliatory actions taken against Plaintiff after he complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

82.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## **COUNT I – Title VII**

83.     Plaintiff incorporates herein by reference paragraphs 1 through 82 above, as if set forth herein in their entirety.

84.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

85.     Said violations were done with malice and/or reckless indifference.

86.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

87.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

88.     No previous application has been made for the relief requested herein.

## COUNT II – Section 1981

89.    Plaintiff incorporates herein by reference paragraphs 1 through 88 above, as if set forth herein in their entirety.

90.    By committing the foregoing acts of discrimination and retaliation, Defendants have violated Section 1981.

91.    Said violations were done with malice and/or reckless indifference, and warrant the imposition of punitive damages.

92.    As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

93.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

94.    No previous application has been made for the relief requested herein.

## COUNT I - ADA

95.    Plaintiff incorporates herein by reference paragraphs 1 through 94 above, as if set forth herein in their entirety.

96.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

97.    Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

98.     As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

99.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

100.    No previous application has been made for the relief requested herein.

## COUNT IV – PHRA

101.    Plaintiff incorporates herein by reference paragraphs 1 through 100 above, as if set forth herein in their entirety.

102    Defendants, by the above improper and discriminatory and retaliatory acts, has violated the PHRA.

103.    Said violations were intentional and willful.

104.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

105.    Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

106.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)      declaring the acts and practices complained of herein to be in violation of Title VII;

(b)      declaring the acts and practices complained of herein to be in violation of Section 1981;

(c)      declaring the acts and practices complained of herein to be in violation of the ADA;

(d)      declaring the acts and practices complained of herein to be in violation of the PHRA;

(e)      enjoining and permanently restraining the violations alleged herein;

(f)      entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(g)      awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(h)      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(i)      awarding punitive damages to Plaintiff under Title VII;

(j)      awarding punitive damages to Plaintiff under Section 1981;

(k)      awarding punitive damages to Plaintiff under the ADA;

(l)      awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the ADA, and the PHRA;

(m)      awarding Plaintiff the costs of suit, expert fees, and other disbursements, and reasonable attorneys' fees; and,

(n)      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated:  August 8, 2022                BY:  _____
                                                    Caren N. Gurmankin (205900)
                                                    1525 Locust Street, 9th Floor
                                                    Philadelphia, PA 19102
                                                    (215) 545-7676

                                                    Attorney for Plaintiff,
                                                    Troy Chiddick

15

# EXHIBIT 1

Received

SEP 3 0 2020

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| **TROY CHIDDICK** | :     Docket No. 202000979 |
| v. | : |
| RESPONDENT: | : |
| **ROSEMONT COLLEGE** | : |

1. The Complainant herein is:

   Name:     Troy Chiddick

   Address:     ████████████
   King of Prussia, PA 19406

2. The Respondent herein is:

   Name:     Rosemont College

   Address:     1400 Montgomery Avenue
   Rosemont, PA 19010

3. I, Troy Chiddick, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black) and retaliation because of my complaints of race discrimination, as set forth below.

### Discrimination

**A. I specifically allege:**

[1]     I was hired by Respondent in or about August 2008.

[2]     I have more than twelve (12) years of service at Respondent.

[3]     I am a current employee of Respondent.

[4]     I consistently perform my job duties in a highly competent manner.

[5]     I hold the position of Dean of Students.

[6]     I report to Lisa Dolling (white), Provost and Senior Vice President for Academic and Student Affairs. Dolling reports to Jayson Boyers (white), President.

[7]     Neither Dolling nor Boyers had any role in my being hired at Respondent.

[8]     In or about 2017, I began directly reporting to Dolling.

[9]     On or about June 1, 2020, I began indirectly reporting to Boyers.

[10]    I am one (1) of two (2) black employees directly reporting to Dolling.

[11]    I am one (1) of two (2) black employee indirectly reporting to Boyers.

[12]    Respondent has an underrepresentation of black employees, particularly in high-level positions.

[13]    In addition to me, the following employees directly report to Dolling.

    (a) Paulette Hutchinson (white), Academic Dean;

    (b) Cathy Fennell (white), Director of the Library;

    (c) Keely Cutts (white), Registrar;

    (d) Anne Coleman (white), Assistant Dean, Director of the Student Academic Success Center;

    (e) Louis Heyges (white), Director of Admissions;

    (f) Catarina Moreira (white), Director of Admissions;

    (g) Jeremy Vaughn (white), Instructional Technologist;

    (h) Joe Pavlow (white), Director of Athletics;

    (i) Alan Preti (white), Director of the Ethical Institute;

> (j) Karen Geiger (black), Director of Student Services and Interim
> Dean of the School of Graduate and Professional Studies.

[14]     Respondent has treated black employees, including me, differently and worse, and in a more hostile and dismissive manner, than white employees have been treated.

[15]     Dolling has unjustly criticized my performance and treated me in a demeaning and accusatory manner.

[16]     On multiple occasions, Dolling commented that she was going to "fix" my speaking and writing. I never heard Dolling make the same comment to white employees.

[17]     Dolling and Jane Federowicz (white), Assistant Vice President for Human Resources, have circumvented me and addressed with my direct reports matters that should have been addressed with me.

[18]     Federowicz asked my direct reports if they were covering for me.

[19]     Federowicz instructed me to pay attention to the racial makeup of my department. At the time, three (3) out of four (4) of my direct reports were black. She raised the racial makeup of my department numerous times, especially when there was an open position in my department.

[20]     Dolling told me that there were some concerns with the racial makeup of my department.

[21]     Dolling instructed me to remove Marshall (black) and Oliver (black) from the search committee for an Assistant Director of Residential Life position. Dolling instructed me to replace Marshall (black) with Matthew Baker (white), Director of Public Safety.

[22]     I felt pressure from Dolling to hire a white employee for the Assistant Director of Residential Life position in my department.

[23]     In addition to me, Respondent has singled out, targeted, and unjustly criticized, without limitation, Travis Marshall (black), Assistant Dean and Director, Joan Wilder (black), Adjunct Instructor, Kendyl Oliver (black) Coordinator of Advising, and Osmond Mbaeri (black), Public Safety Director.

[24]     Dolling told me that Marshall (black) was sloppy and defensive, and asked me why Marshall was still working at Respondent.

[25]     Marshall (black) was paid less than Francis Bowe (white), Director of Post Graduate Success, when he held the same position.

[26]     Dolling asked me when Oliver (black) was going to leave Respondent.

[27]     Dolling asked me how long Wilder (black) was going to be in her position.

[28]     Federowicz tried to convince me that my direct report, Oliver (black), had reported a sexual harassment or misconduct complaint against Mbaeri (black). I stated that Oliver had not reported any issues to me regarding Mbaeri and I was not aware of any issues with Mbaeri.

[29]     When Mbaeri (black) was terminated, he was replaced by Baker (white).

[30]     On August 25, 2020, Dolling instructed me to move a black student out of her room immediately to make space for white students. I objected, and asked why. Without any explanation, she yelled at me and told me to get it done immediately.

[31]     On September 11, 2020, in an email to Dolling, I complained of race discrimination in connection with the above student matter. I complained: "What I explained was with the individual students involved, I personally wanted to handle with care. We are a diverse campus and every interaction with students should be handled with care. The student that you demanded that I move right away was an [sic] black student and she was in a [sic] empty

room. There was no issue with safety or roommates. The individuals that you were asking me to accommodate were white. My reason for wanting to handle this delicately was I did not want have any perceptions of unfairness, especially when the room in question was not being occupied by the other students and time was on our side. My goal was to put Rosemont in thw [sic] most positive light and not risk negative perception. Again, I was able to resolve this issue successfully. I would very much like to move forward professionally. There has never been an issue with my work and I will continue to complete my job responsibilities with integrity. Lisa, all I have ever asked is to spoken [sic] to verbally in a professional and respectful manner as I have done the same. My goal is not cause issues, but I am concerned that recently there has been written statements documenting things that I know that are not accurate. I am concerned that there have been work arounds in my area to get negative information regarding my work."

[32]     On September 11, 2020, in a response email from Dolling, she ignored my race discrimination complaint and called my work "extremely careless and sloppy."

[33]     On September 14, 2020, in a meeting with and follow-up email to Federowicz, I complained of race discrimination.

[34]     I received no response to my email.

[35]     Respondent failed to investigate my race discrimination complaints.

[36]     Respondent failed to remedy or prevent the race discrimination to which I was subjected.

[37]     On September 17, 2020, in a meeting with Dolling, Federowicz, and Boyers, I was placed on a sixty (60) day Performance Improvement Plan ("PIP"). My performance did not warrant a PIP. The PIP contained false statements and misrepresentations. In the PIP, Dolling criticized me for objecting to the way that she treated Marshall, including

singling him out as needing assistance. Dolling stated: "It is worth noting that subsequent emails from Travis [Marshall] have been less than cordial and uncharacteristically disrespectful, evidence of the far-reaching effects of Troy's behavior." In the PIP, in bold print, Dolling instructed me to **"not reveal any details of this PIP to anyone in [my] department or elsewhere at the College,** nor discuss anything that was reported by any of [my] staff members about [my] comments or behavior."

[38]     Respondent placed me on a PIP because of my race and/or my race discrimination complaints.

[39]     On September 21, 2020, I went out of work on an FMLA medical leave of absence, as a result of the race- and retaliatory-based hostile work environment to which I have been subjected.

[40]     Respondent failed to investigate my complaints of race discrimination.

[41]     Respondent failed to remedy or prevent the race discrimination at Respondent.

[42]     Respondent is trying to push me out because of my race and/or my race discrimination complaints.

[43]     Respondent has subjected me to a hostile work environment because of my race and/or race discrimination complaints.

[44]     Respondent's race discriminatory and retaliatory conduct toward me have has caused me emotional distress.

[45]     **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are black, and who have been discriminated against based on race in connection with hiring,**

promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.

**B.** Based on the aforementioned, I allege that Respondent has discriminated against me because of my race (black) and retaliated against me because of my complaints of race discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended. 43 P.S. § 951, *et seq.* ("PHRA").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   **X**    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a); (d)**

\_\_\_\_    Section 5.1 Subsection(s) _____ _____ .    _____ \_\_

\_\_\_\_    Section 5.2 Subsection(s) _____ \_\_ _____ _____ .

\_\_\_\_    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____ _____ _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

   **X**    **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

9/30/20
(Date Signed)

(Signature) // Troy Chiddick

King of Prussia, PA 19406

# EXHIBIT 2

┌─────────────────────────────────┐
│　　　　　**Received**　　　　　　│
│　　　　APR **1 5** 2021　　　　　│
│　　PA Human Relations Commission │
│　　Philadelphia Regional Office　│
└─────────────────────────────────┘

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## SECOND COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| | : |
| **TROY CHIDDICK** | :　　Docket No. 202000979 |
| | : |
| v. | : |
| | : |
| RESPONDENT: | : |
| | : |
| **ROSEMONT COLLEGE** | : |
| | : |

1.　The Complainant herein is:

　　　Name:　　Troy Chiddick

　　　Address:　███████████████
　　　　　　　King of Prussia, PA 19406

2.　The Respondent herein is:

　　　Name:　　Rosemont College

　　　Address:　1400 Montgomery Avenue
　　　　　　　Rosemont, PA 19010

3.　I, Troy Chiddick, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black) and my disability (including history of and regarded as), and retaliation because of my complaints of race discrimination and my seeking reasonable accommodations for my disability, as set forth below.

### Discrimination

　　**A. I specifically allege:**

　　[1]　　On September 30, 2020, I filed my first Complaint with the PHRC.

[2]        On September 30, 2020, in an email to Lisa Dolling (white), Provost and Senior Vice President for Academic and Student Affairs, Jayson Boyers (white), President, and Jane Federowicz (white), Assistant Vice President for Human Resources, I informed Respondent that I filed a Complaint with the PHRC and attach a copy of my Complaint to the email. I stated the following: "As a courtesy, I want to inform you that I have filed a Complaint of discrimination and retaliation with the Pennsylvania Human Relations Commission, a copy of which is attached."

[3]        I received no response to my email.

[4]        Respondent failed to investigate my complaints of race discrimination and retaliation.

[5]        Respondent failed to remedy or prevent the race discrimination and retaliation at Respondent.

[6]        I remained out of work on an FMLA medical leave of absence, as a result of the race- and retaliatory-based hostile work environment to which I was subjected.

[7]        On or about October 1, 2020, I began reporting to Mika Nash (white), Provost and Senior Vice President for Academic and Student Affairs, who replaced Dolling.

[8]        On December 8, 2020, in an email to Kathleen Colucci (white), Associate Director of Human Resources, copying Nash, I requested an extended medical leave of absence as an accommodation for my medical condition, and attached a doctor's note stating that I should remain on a medical leave of absence until January 18, 2021.

[9]        Respondent approved my request and told me that, upon my return to work on January 19, 2021, I would have one hundred sixty-seven (167) sick days remaining.

[10]     On January 11, 2021, in an email to Colucci, copying Nash, I requested an extended medical leave of absence as an accommodation for my medical condition, as my doctor stated that I should remain on a medical leave of absence until March 1, 2021.

[11]     Respondent approved my request and stated the following: "We will continue to use your sick days for the days you are absent through March 1, 2021. Upon your anticipated return on March 2, 2021, you will have 137 sick days remaining."

[12]     On February 26, 2021, in an email to Nash, I stated that I was scheduled to return to work on March 2, 2021, that I was looking forward to returning work and working with her, and that I was available to meet upon my return to work.

[13]     On March 1, 2021, in an email from Nash, she stated that, before I could return to work, I must provide a doctor's note, clearing me to return to work, and a negative COVID-19 test. She stated that she and Boyers would meet with me on my "first day back to discuss [my] return and the exciting structural changes that are in process."

[14]     On March 5, 2021, in an email to Nash, I provided the requested documents to return to work.

[15]     On March 9, 2021, I returned to work from my medical leave of absence.

[16]     On March 9, 2021, in a meeting with Nash and Boyers, Respondent demoted me. I was told that I would no longer be Dean of Students, and was offered a Program Director or Assistant Dean position instead. The stated reason was reorganization. To remain employed with Respondent, I accepted the Assistant Dean position.

[17]     On March 9, 2021, I began reporting to Jennifer Barry (white), as Dean of the School of Graduate and Professional Studies, who reported to Nash.

[18]     I was instructed to meet with Barry twice each week.  To my knowledge, none of Barry's other direct reports were instructed to meet with her twice each week.

[19]     Respondent removed a portion of my job duties and responsibilities and assigned them to white and/or noncomplaining and/or nondisabled employees who had not sought reasonable accommodations for a disability, including Ben Huelskamp (white), Assistant Dean, Director of Residence Life, and Ian Jackson (white), Assistant Director of Residence Life.

[20]     Respondent instructed me to vacate my office and assigned me to a less desirable office.

[21]     Respondent assigned me tasks that were not feasible to complete in the timeframe provided.

[22]     Respondent treated me in an increasingly hostile and dismissive manner.

[23]     Respondent was setting me up to fail.

[24]     On March 24, 2021, in an email to Barry, copying Nash and Raeann Billey (black), Senior Director, Human Resources, I complained of race discrimination and retaliation. I complained:

> My return to Rosemont has not gone as smoothly I as would have hoped for.  In communications with you and Mika, I really thought that I would be given a fair opportunity to be successful at Rosemont and this does not seem to be the case.
>
> I would like to continue to be very transparent, open and honest.  I will outline my experience below.  This will explain why I feel disturbed, stressed and concerned.
>
> • Upon returning to work, I was informed by Mika that I was no longer in my previous position as Dean of Students.  I was initially offered a new role as a Program Director.  This change in title and responsibilities seemed like a step backwards in my career and long history at Rosemont, but I agreed to accept it because I saw some interest as the position was explained in

some detail. I was also hoping that I could prove my professional worth and move forward as this would be my first opportunity to work with you and Mika. Later that day Mika and I spoke again and she offered me a position as assistant dean in SGPS with some additional responsibilities and I agreed.

- I do not know why I was removed from my previous position as Dean of Students or why I was demoted. I would like to return to my Dean of Students position. If Rosemont is hiring for the position, I would like the opportunity to interview for my previous position as Dean of Students.

- In our first meeting you suggested that we meet 2 times per week which seemed odd, but I assumed that it was to support my efforts. I now have a different outlook. To my knowledge, no other staff member meets with the Dean of SGPS two (2) times per week. Why am I being singled out?

- In summary, the current position has been stripped of management responsibilities and advising duties which are my strengths. I feel that I am being set up to fail with unrealistic deadlines and without input on my end. This has created a very stressful environment for me at Rosemont College. I am still being held to a Performance Improvement Plan "PIP" that originally had and continues to have no basis of truth.

I believe that I was removed from my Dean of Students position, demoted, and targeted because of my race and race discrimination complaints.

[25]     I received no response to my email.

[26]     Respondent failed to investigate my race discrimination and retaliation complaints.

[27]     Respondent failed to remedy or prevent the race discrimination and retaliation to which I was subjected.

[28]     On March 24, 2021, in an email to Barry, copying Nash and Billey, I provided a doctor's note that placed me on a medical leave of absence, effective immediately for thirty (30) days, as an accommodation for my medical condition.

[29]    On March 29, 2021, in an email from Nash, copying Barry and Billey, she stated the following: "We received the March 24 note from your doctor excusing you from work for 30 days. Before we are able to decide if you can be excused, we want to explore with you whether alternative means exist to enable you to continue working in your new role during those 30 days. Please let us know if you can continue working remotely from home, since that is already permitted for your position. We ask that you respond by Wednesday, March 31, 2021."

[30]    On March 30, 2021, in an email to Nash, Barry, and Billey, I stated the following: "Per my doctor, I am not able to work in any capacity for 30 days. My doctor and I will discuss the option of working from home following this 30 day medical leave of absence that my doctor has placed me on."

[31]    On April 1, 2021, in a letter from Nash, Respondent terminated my employment, effective immediately. The stated reason was that, "since [I was] unable to work from home, [Respondent] cannot accommodate [my] request for an additional 30 days of leave."

[32]    I was scheduled to return to work on April 23, 2021, and had more than one hundred thirty (130) sick days remaining when Respondent terminated my employment.

[33]    On April 5, 2021, in an email to Nash and Billey, I stated the following:

> I do not understand why my request for a 30 day medical leave, as an accommodation for my medical condition, was not granted. I currently have accumulated earned sick time totaling over 130 days. I was expecting to be able to return to work, once cleared by my doctor, following my brief medical leave. Also, you mentioned that my accrued vacation day would paid out to a maximum of 20 days. I currently have in excess of 20 accrued vacation days in which I have earned and not used.

> The continued stress and unfair racially motivated unjust work environment that Rosemont has put me under because of my race and racial discrimination complaint has continued. I continue to be treated differently from my white colleagues on

To: 12155603682    Page: 08 of 13    2021-04-15 10:42:24 EDT    12155652858    From: Nancy Glace

Rosemont College, and I do not know of any other employee that has been terminated in this manner.

I look forward to your response to my statements and concerns above.

[34]    I received no response to my email.

[35]    Respondent assigned my job duties and responsibilities to white and/or noncomplaining and/or nondisabled employees who had not sought reasonable accommodations for a disability, including Huelskamp (white) Jackson (white). I was more qualified to perform my job duties and responsibilities than the white and/or noncomplaining and/or nondisabled employees who had not sought reasonable accommodations for a disability to whom they were assigned.

[36]    Respondent subjected me to a hostile work environment because of my race and/or race discrimination complaints and/or disability and/or seeking reasonable accommodations, including medical leaves of absence, for my disability.

[37]    Respondent demoted me because of my race and/or race discrimination complaints and/or disability and/or seeking reasonable accommodations, including medical leaves of absence, for my disability.

[38]    Respondent terminated my employment because of my race and/or race discrimination complaints and/or disability and/or seeking reasonable accommodations, including medical leaves of absence, for my disability.

[39]    Respondent's race and disability discriminatory and retaliatory conduct toward me have has caused me emotional distress.

[40]    **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are**

black, and who have been discriminated against based on race in connection with hiring, promotion, demotion, compensation, being subjected to a hostile work environment, position selection, and termination.

    **B.** Based on the aforementioned, I allege that Respondent has discriminated against me because of my race (black) and my disability (including history of and regarded as) and retaliated against me because of my complaints of race discrimination and my seeking accommodations for my disability, including medical leaves of absence, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

    4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

      **X**      **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):　(a); (d)**

      ____      Section 5.1 Subsection(s) _____

      ____      Section 5.2 Subsection(s) _____

      ____      Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

    5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

      **X**      **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory practice(s) and procedure(s).

(c) Remedy the discriminatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

4/14/21
(Date Signed)

*Troy Chiddick*
(Signature)    Troy Chiddick
████████████
King of Prussia, PA 19406

# EXHIBIT 3

EEOC Form 161-B (01/2022)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (*ISSUED ON REQUEST*)

| To:  **Troy Chiddick** | From:  **Philadelphia District Office** |
|---|---|
| ▮▮▮▮▮▮▮▮ | **801 Market St, Suite 1000** |
| **King of Prussia, PA 19406** | **Philadelphia, PA 19107** |
| | **(267) 589-9700** |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2021-60447** | **Damon Johnson,** | **(267) 589-9722** |
| | **State, Local & Tribal Program Manager** | |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.*

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Karen McDonough
05/16/2022

**Karen McDonough**
**Enforcement Manager**

cc:  For Respondent: Rosemont College
    **Gregory S. Hyman, Esq.**
    **Kaufman Dolowich Voluck LLP**
    **Four Penn Center**
    **1600 John F. Kennedy Blvd, Suite 1030**
    **Philadelphia, PA 19103**

    For Charging Party:
    **Caren N. Gurmankin, Esq.**
    **Console Mattiacci Law, LLC**
    **1525 Locust Street, 9th Floor**
    **Philadelphia, PA 191021**